# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESA Y. GURULE, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| vs. | )   CASE NO. 05-CV-314-FHM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the | ) |
| Social Security Administration,[1] | ) |
| | ) |
|     DEFENDANT. | ) |

## ORDER

Plaintiff, Teresa Y. Gurule, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine

---

[1] On February 1, 2007, Michael J. Astrue was confirmed as Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart the former Commissioner, as defendant in this case. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff's July 11, 1996 application for disability insurance benefits was denied initially and upon reconsideration and ultimately by an Administrative Law Judge (ALJ) on July 13, 1998. The Appeals Council denied review of the ALJ's decision, making that decision final for purposes of appeal. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed an appeal of the decision in the United States District Court for the Northern District of Oklahoma. On July 18, 2002, the Court reversed and remanded the case for further proceedings. In the meantime, Plaintiff had filed an application for widow's insurance benefits on April 8, 2002. The two claims were consolidated for disposition by an Administrative Law Judge (ALJ). A hearing was held November 3, 2003 and a supplemental hearing was held on February 3, 2004. By decision dated March 16, 2004, the ALJ entered the findings which are the subject of this appeal. The Appeals Council declined jurisdiction on February 23, 2005.

that the Commissioner has applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was born March 14, 1952, and was 51 years old at the time of the November 3, 2003 hearing. [R. 310].  She claims to have been unable to work since March 1, 1995, due to severe pain in her neck, shoulders, spine, legs and severe headaches. [R. 314].

The ALJ determined that Plaintiff has severe impairments consisting of degenerative disease involving Plaintiff's spine, right shoulder and hip. [R. 268].  The ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform a full range of light work, including lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, pushing and pulling without limitation and standing, walking and sitting, respectively, for 6 hours during an 8-hour workday. [R.274]. He determined that, with this RFC, Plaintiff remains able to perform the physical and mental demands of her past relevant work (PRW) as a waitress and real estate agent. [R. 274].  The ALJ also applied the Medical-Vocational Rules [Grids] in an alternative step five finding that

Plaintiff is not disabled as defined by the Social Security Act. [R. 275]. The case was thus decided at step four of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ's decision is not based upon substantial evidence and that it should be reversed because: 1) the ALJ substituted his own opinion disregarding the medical expert testimony; and 2) the ALJ failed to properly assess Plaintiff's pain testimony. [Plaintiff's Brief, p. 5]. For the following reasons, the Court finds this case must be reversed and remanded to the Commissioner for further development.

## Medical History

The administrative record contains medical treatment records from as far back as 1995. However, because Plaintiff's allegation of error is limited to the ALJ's consideration of the medical evidence relating to her right shoulder injury in 2002, only the records relevant to that issue are addressed in this order. To that end, the following evidence is noteworthy:

Plaintiff sought medical treatment from Richard A. Hastings, II, D.O., on March 12, 2002, for injuries she sustained in a car accident on March 4, 2002. [R. 592-596]. Dr. Hastings ordered MRI studies which indicated mild degenerative disc disease of the lumbosacral spine and mild degenerative changes of the cervical spine. [R. 597-598]. The MRI of Plaintiff's right shoulder revealed: "Mild degenerative joint disease. Probable minimal tendinopathy secondary to impingement of the rotator cuff between the humeral head and AC Joint." [R. 599]. Dr. Hastings prescribed anti-inflammatory medications, muscle relaxants and physical therapy for Plaintiff's cervical spine and

lumbosacral back. [R. 589-591]. He referred Plaintiff to an orthopaedic surgeon for her shoulder injury. *Id.*

James C. Mayoza, M.D., examined Plaintiff on April 23, 2002, and diagnosed impingement syndrome of the right shoulder. [R. 414-416]. He recommended conservative treatment with Dep Medrol and Marcaine injections. [R. 415]. After two months of this treatment regimen with no improvement demonstrated, Dr. Mayoza determined arthroscopic surgery was warranted. [R. 411-413]. Surgical notes by Dr. Mayoza on July 22, 2002, reflect a postoperative diagnosis of: "Anterior capsule tear (Bankart lesion)" and "Impingement syndrome, right shoulder."[3] [R. 400-403]. During his follow-up examination of Plaintiff on August 6, 2002, Dr. Mayoza noted "much complaining on the part of the patient" of pain about the right shoulder. [R. 410]. He commented that Plaintiff "had adhesive capsulitis (frozen shoulder)[4] in addition to a large anterior capsule tear" and, after talking with the physical therapist involved in Plaintiff's treatment of her back problems, recommended physical therapy for the shoulder. [R. 410, 438]. Plaintiff was unable to engage in physical therapy exercises for her shoulder on August 19, 2002, because of pain. [R. 437]. On August 29, 2002, Dr. Mayoza reported continuing numerous complaints in regard to Plaintiff's right shoulder and expressed disappointment in Plaintiff's lack of improvement. [R. 408-

---

[3] Bankart lesion refers to an avulsion of the anterior glenoid labrum following anterior dislocation of the shoulder. *See* Dorland's Illustrated Medical Dictionary 918 (28th ed.1994).

[4] Adhesive capsulitis is described as adhesive inflammation between the joint capsule and the peripheral articular cartilage of the shoulder with obliteration of the subdeltoid bursa, characterized by painful shoulder of gradual onset, with increasing pain, stiffness and limitation of motion. Called also adhesive bursitis and frozen shoulder. *See* Dorlands at 261.

409]. He decided to perform another surgery to make certain the Bankart repair was still intact. *Id.*

On September 9, 2002, Dr. Mayoza performed a second surgery in which he removed five small shards/fragments of the Bionsx labral nail, repaired the anterior capsule and inserted a metal staple. [R. 404-405; 467-468]. Dr. Mayoza held a "long conference" with Plaintiff on September 12, 2002, in the presence of Plaintiff's physical therapist. [R. 407]. He outlined exercises to be performed for eight weeks, after which he planned to remove the staple, do an acrominoplasty and "proceed to more vigorous physical therapy." [R. 407].

On November 14, 2002, Dr. Mayoza reported that Plaintiff "continues to make every effort to improve. However, she does have some adhesive capsulitis despite intensive physical therapy as there is some scapulothoracic motion." [R. 452]. Examination that day revealed restricted abduction. The doctor said: "At the time of her staple removal, I will repeat the manipulation of the shoulder in a very gentle fashion so as to hopefully help her regain a better or improved range of motion." *Id.*

Plaintiff attended regularly scheduled physical therapy sessions consisting of passive range of motion and strengthening exercises from September 16, 2002 through January 23, 2003. [R. 425-436]. During this period Plaintiff was reported to be "emotional," "guarded," "apprehensive," "sore" and "achy" but range of motion gradually improved and on January 2, 2003, Plaintiff reported she was able to "color her hair" which she had not had the mobility to do until then. [R. *Id.*, 426].

On January 24, 2003, surgery to remove Plaintiff's staple and manipulation of the glenohumeral joint was performed. [R. 424, 450, 455-459]. Dr. Mayoza reported on

January 28, 2003, that he was pleased with Plaintiff's progress. [R. 449]. He warned Plaintiff to avoid abnormal motion that produces pain. *Id.* Plaintiff continued range of motion therapy and began a light strengthening program on January 30, 2003. [R. 425]. In February 2003, Plaintiff expressed concern that she did not have full range of motion, reported some soreness, sharp pains she described as "zingers" and was noted to be tolerating exercises fairly well. [R. 423-424]. Plaintiff continued shoulder rehabilitation therapy consisting of strengthening, passive stretching and passive range of motion exercises through March 2003 and was described as doing well overall. [R. 422-423]. On April 3, 2003, Dr. Mayoza measured Plaintiff's forward flexion elevation to the 120 position, abduction to 115 degrees, internal rotation at 2+ and external rotation at 3+. [R. 448]. He ordered physical therapy for four more weeks. [R. 422, 448]. Physical therapy records describe grinding crepitus in the right shoulder with active movement and exceptional popping with passive range of motion along with complaints of sharp pain "zingers" throughout April 2003. [R. 421-422].

After examining Plaintiff on May 1, 2003, Dr. Mayoza wrote: "She continues to have some restriction in abduction and external rotation." [R. 447]. He ordered additional therapy for two weeks and planned dismissal within the next 30 days. *Id.*[5] Physical therapy records indicate Plaintiff continued with an exercise regimen on her right shoulder through mid-May 2003, during which time the therapist reported that Plaintiff could use her right arm with activities of daily living but she did not think it was strong enough and that she still had many areas of hypersensitivity. [R. 420]. On May

---

[5] There is no discharge report from Dr. Mayoza in the record.

15, 2003, Plaintiff was noted to still be protective with certain movements. She was instructed to continue with a home exercise plan and to call if she had questions. *Id.*

The next examination note in the record by Dr. Mayoza is dated September 15, 2003, when Plaintiff presented complaining of low back pain. [R. 502]. In this and in Dr. Mayoza's subsequent report on October 7, 2003, there is no mention of Plaintiff's right shoulder. [R. 500-501]. Likewise the physical therapy treatment records from the time period between October 7, 2003 and the discharge evaluation on November 5, 2003, indicate Plaintiff's complaints involved back pain, neck pain, hip pain and headaches with no mention of right shoulder problems. [R. 476-492, 685-686].

## Medical Expert Testimony

At the hearing on November 3, 2003, the ALJ explained to Plaintiff and her attorney that he would schedule a supplemental hearing with a medical expert "to try to help with the onset date and maybe the severity of some of the problems." [R. 336]. At the supplemental hearing on February 3, 2004, Susan Kelly Blue, M.D., a neurologist, testified via telephone. [R. 338, 524].[6] Dr. Blue mentioned several times during her testimony that she did not have records from 2003 to give her details and that her impression was that Plaintiff's last surgery was September 9 [2002]. [R. 346-355]. Based upon her review of the medical record, Dr. Blue opined that, before the accident of March 4, 2002, Plaintiff was able to lift 20 pounds frequently, 40 pounds occasionally with the same weight limit on pushing and pulling and that there were no

---

[6] The ALJ's letter to Dr. Blue requesting her appearance at the hearing includes a reference to "pertinent medical exhibits (and a list of these exhibits) tentatively selected for inclusion in the record" of the case. [R. 523]. However, the administrative record before the Court does not contain a copy of the list and it is unclear whether Dr. Blue was ever provided all the medical records relating to Plaintiff's shoulder injury, the third surgery and physical therapy treatment through May 15, 2003.

limitations on sitting, standing or walking. [R. 347]. Dr. Blue testified that Plaintiff was limited to lifting two pounds frequently and 10 pounds occasionally with the right arm commencing on the date of Plaintiff's accident on March 4, 2002 and ending in November 2002, allowing for a two-month period of time after Plaintiff's September 2002 surgery for "appropriate healing." [R. 346-348]. Assuming Plaintiff had "good recovery" Dr. Blue testified that Plaintiff's lifting limitations after November 2002 would return to her pre-accident lifting limitations of 20 pounds frequently and 40 pounds occasionally with both arms. *Id.*

## The ALJ's Decision

In his written decision, the ALJ stated Dr. Blue had "reviewed pertinent medical evidence concerning the claimant's impairments." [R. 272]. As noted above however, the record indicates otherwise. The ALJ then had this to say about Dr. Blue's opinion:

> Based upon her analysis of the medical evidence, the medical expert offered an opinion regarding the claimant's ability to perform physical work-related activities. According to the medical expert, the claimant remains able to perform the full range of work, except that she has lifting limitations of forty pounds occasionally and twenty pounds frequently. Upon considering the remaining evidence in the record, the [ALJ] concludes that the claimant is somewhat more limited with respect to her capacity for lifting and carrying.

[R. 272].

## Discussion

Before relying upon the opinion of a medical expert who had purportedly reviewed the medical record, the ALJ should have ensured that the expert had reviewed all the medical records, once he realized she had not done so. There is no

indication that the ALJ attempted to correct Dr. Blue's understanding of the medical record or to provide her with the medical records relating to the time period between September 9, 2002 and May 15, 2003.  The Court notes that Plaintiff's attorney also failed to inform Dr. Blue of Plaintiff's post September 2002 treatment for continuing right shoulder problems and subsequent surgery.  However, it is the ALJ's duty to ensure the record is fully developed.  *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993) (An ALJ has the responsibility "in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."); see also 20 C.F.R. §§ 404.944, 416.1444 (requiring ALJ to look fully into issues). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. *White v. Barnhart,* 287 F.3d 903, 908 (10th Cir. 2001).  The ALJ did not do so in this case.

The ALJ did not adequately address the medical evidence as it relates to his RFC findings.  Although the RFC determination is based upon all the evidence, not just the medical evidence, the ALJ must discuss the relevant medical evidence bearing upon his RFC assessment in some detail. See Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."). The ALJ did not mention Dr. Blue's opinion that Plaintiff had more restrictive limitations "[d]uring the time that the shoulder was bothering her from the motor vehicle accident." [R. 347].  Plaintiff claims that she was unable to perform

9

activities involving use of her right shoulder and that she was not released from physical therapy for her shoulder until May 2003. [R. 335]. Dr. Blue's testimony regarding Plaintiff's limitations during the time of her convalescence is probative and the time period involved is a significant issue that required resolution. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004)*; Rutledge v. Apfel,* 230 F.3d 1172 (10th Cir. 2000) (ALJ must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely upon, and any significantly probative evidence he rejects). Contrary to the argument presented by counsel for the Commissioner, the ALJ did not fully discuss Dr. Blue's testimony and the questions regarding the severity and duration of Plaintiff's functional limitations in the use of her shoulder remain unresolved.

Without the informed opinion of a medical expert as to Plaintiff's functional limitations, the ALJ had no medical evidence to support his RFC finding.[7] *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (ALJ is charged with determining a claimant's RFC from the medical record); 20 C.F.R. § 416.927(e)(2). The ALJ's failure to set forth the basis of his RFC determination leaves the Court unable to review this aspect of his analysis. *See Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (ALJ urged to include reasoning in decisions to make appellate review not only possible but meaningful). "The failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005).

---

[7] The Court notes the record contains a Physical Medical Source Statement filled out and signed by R. Sweeten, M.D. on October 19, 2003. [R. 473-475]. The ALJ gave limited weight to that opinion based upon limited examination and treatment opportunity and inconsistency with the record. [R. 273-273]. Plaintiff has not specifically challenged that finding.

The ALJ relied upon Dr. Blue's testimony in concluding that Plaintiff's allegations were not totally credible. [R. 274]. In doing so, he addressed only those claims related to Plaintiff's alleged back impairment. He did not discuss the weight limitations Dr. Blue assessed in Plaintiff's ability to push and pull prior to and after her convalescence period. [R. 346-347]. He did not explain why he adopted a portion of Dr. Blue's testimony but rejected her opinion regarding Plaintiff's weight limitations in pushing and pulling activities. Because the RFC the ALJ ultimately assessed for Plaintiff included unlimited pushing and pulling activities, this evidence warranted consideration.

Counsel for the Commissioner has proffered an explanation of how the treatment notes support the ALJ's determination that "while Plaintiff had some pain and limitation of motion, she was not disabled from performing all work." [Defendant's brief, p. 4].[8] The ALJ did not, however, include these findings in his written decision. Nor did he explain how he considered and resolved the evidence in the record that was inconsistent with his RFC determination. A reviewing court cannot make factual determinations on the agency's behalf. *See Rapp v. United States Dep't of Treasury*, 52 F.3d 1510, 1515 (10th Cir. 1995) (reviewing court may not compensate for deficiencies in an agency's decision "by supplying a reasoned basis for the agency's action that the agency itself has not given.").

---

[8] Defendant's citations to the record to support this argument are to physical therapy notations made before Plaintiff's January 2003 surgery and the summaries of the contents of those records are not entirely accurate, i.e. Plaintiff was able to reach behind her back to her waist "with assistance" and her range of motion and stretching exercises were "passive." [R. 421-424].

Additionally, it does not appear that the ALJ attempted to obtain an evaluation from Plaintiff's surgeon and treating physician, Dr. Mayoza, with a clear assessment of Plaintiff's condition. If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (citing 20 C.F.R. § 416.912(e) (if record contains no substantial evidence upon which to base an RFC finding, the ALJ should recontact claimant's physicians). If such information is not attainable, a consultative examination may be required for proper resolution of this disability claim. *See Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997; *see also* 20 C.F.R. §§ 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense."); *Id.* § 416.912(f).[9]  Because the medical record is overwhelmingly inconsistent with the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence.

## **Conclusion**

The ALJ found one of Plaintiff's severe impairments was degenerative disease involving her right shoulder.  The record supports Plaintiff's claim that she had a severe impairment of right shoulder impingement, Bankart lesion and adhesive capsulitis with

---

[9] Plaintiff underwent a consultative examination by Dr. Marcelo Perez-Montes on June 20, 2002, at which cervical strain and right shoulder impingement were noted with an assessment that Plaintiff "should continue to be followed closely for any changes in her current condition." [R. 633-639]. This was a month before the first of Plaintiff's three surgeries.

residual pain, stiffness and limited range of motion for some period of time after March 4, 2002. [R. 335]. Upon remand, the ALJ should develop the record on Plaintiff's right shoulder impairment as appropriate, including, if necessary, recontacting Plaintiff's treating physician and/or obtaining a consultative examination and/or review of all the medical records by a medical expert. After such development, the ALJ may need to adjust his RFC assessment and his findings in subsequent evaluative steps to reflect any information obtained from additional factual development.

Accordingly, the decision of the Commissioner finding Plaintiff not disabled is REVERSED and REMANDED to the Commissioner for further development of the record. In remanding this case, the Court does not dictate any result, but does so simply to assure that the correct legal standards are invoked in reaching a decision based on the facts of this case. *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988).

Dated this 6th day of April, 2007.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE